Case No. 24-1017, LTD Broadband, LLC Petitioner vs. Federal Communications Commission and United States of America. Mr. Showalter for the petitioner, Ms. Flatt for the respondents. Good morning, Judge Rao, and may it please the Court, I'm Michael Showalter, appearing on behalf of LTD Broadband. I reserve two minutes for rebuttal. The FCC designed the RDOF program to encourage innovators and small providers like LTD Broadband to bid for federal support to build out broadband for rural Americans. The FCC deemed LTD Broadband reasonably capable to participate in the auction, and LTD Broadband was the auction's biggest winner. But after a change in administration, the FCC changed course and applied a heightened and skeptical standard of review to LTD Broadband's long-form application that violates its rules and deprived rural Americans of Internet access. The rules say that the Bureau will rely on the bank's willingness to extend a letter of credit and that the professional engineer certification will provide assurance of the applicant's technical qualifications. But the Bureau did not give any weight to those judgments at all. And the Bureau treated the rules as setting a floor and not a ceiling and imposed new requirements on LTD Broadband that do not appear anywhere in the rules. The FCC has responded primarily in two ways. First, the FCC has attacked aspects of our long-form application, but the merits of our long-form application are not before this Court. We believe that we are qualified for RDoF support and that our long-form application should be approved, and that is our position before the agency. A sort of uncharitable view of your argument, and you can tell me why it's not fair, would be the FCC is allowed to make sure that the long-form application is complete, but it's not allowed to look at the quality of the content that's submitted. And if that's the case, why even have the information submitted if the Bureau is not permitted to review it? Sure, Judge Walker, that is not our position. Our position is that the Bureau is not allowed to apply a heightened standard of review for companies that are smaller. So it's certainly allowed to review the application, but it's not allowed to apply a heightened skeptical de novo first look. It's supposed to be giving substantial weight to the judgments of subject matter experts, such as the bank and the engineer and the applicant itself, with its disclosures and certifications. I'm glad that you asked, and I'm sorry for interrupting you. On the topic of a letter of credit, this is from, and I believe it's confirmed right now, it's an unsealed page. It is from the government's brief. It makes this argument, so I'm curious. If the letter of credit commitment letter were alone sufficient to demonstrate an applicant's financial qualifications, the other documents that must be filed with the long-form application, such as audited financial statements and a detailed project funding description, would be unnecessary. Yeah, that's a straw man argument. So most of their brief is actually attacking straw men, and our position is that there had to be substantial weight given to the bank's willingness to extend a letter of credit. The words that the rules use is rely on. We think that means substantial weight. If you think about a statutory interpretation case of dispute, an agency comes to this court and says, we want skid more weight. That means this court should rely on our interpretive conclusion. This court would say, no, that's completely wrong. That's not what skid more weight means. What's the FCC supposed to do? Let's say they have a letter of credit commitment, but the audited financial statements suggest that this company is not going to be able to do what it said it would be able to do. What are they supposed to do then? So I just want to emphasize that the FCC is not arguing that they placed any weight on these judgments of the subject matter experts. If they would have, we would have a different case. For example, if they had said something like, we recognize that the bank was willing to extend this letter of credit, and we recognize that the professional engineer certified the network design. However, we believe that no reasonable person could conclude X, Y, Z. That would be a different case, but the reality is they've actually disclaimed the need to rely on the bank's willingness to extend the letter of credit because they say that the letter of credit came after the long-form stage. The problem for them is that the rules actually refer to the bank's willingness to extend the letter of credit. That comes during the long-form stage, and so they've disclaimed a requirement that the rules impose that we think is very clear. Mr. Showalter, is LTD challenging any of the factual determinations that the FCC made or suggesting that there wasn't substantial evidence for their determinations? Our first two questions presented are independent of the substance of our long-form application. Isn't that strange? I mean, you're not challenging the factual determinations that the FCC has made? We disagree with the factual determinations, but our position— You're not arguing here that they're not supported by substantial evidence in the record. That's not our argument. So our first two questions presented, one is about the standard of review that the FCC applied that we think is inconsistent. I understand those, but you're not arguing that the FCC lacks substantial evidence for its factual findings. No, Your Honor. So our third and fourth issues presented, we think that the FCC's reasoning was insufficiently explained and it was unreasonable. But the first two questions presented are strictly about the standard that the FCC applied and the fact that they failed to provide notice of the requirements that they imposed. I guess I'm not sure how—I'm not sure I understand this argument that the FCC applied a heightened standard. I mean, they're required not just to determine whether the long-form is reasonable, which is the language LTD focused on, but whether it's reasonably capable, and whether it's more likely than not, right, that they can—that LTD can meet its obligations. So how is that a heightened standard? So I can tell you, Your Honor, how it's a heightened standard, how they applied a heightened standard, but I would first just say that they have said themselves that they applied a heightened standard. So if you read paragraph 23 of the commission's order on review, that's the order denying our long-form application, they say we're applying additional scrutiny, further inquiry to LTD broadband's application because of its size. If you compare that with paragraph 76 of the RDOF order, the commission actually rejected a proposal to apply heightened scrutiny to companies because of their size, using almost the exact same words, further inquiry. They said we're not going to— Why don't we just understand that as the FCC trying to determine whether LTD is reasonably capable, and part of the inquiry about whether it's reasonably capable of meeting these obligations is in part related to its size, you know, and whether it's reasonably capable of scaling up to meet these requirements. I mean, the FCC is required to protect the public interest, and before it gives out billions of dollars, presumably it needs to, you know, be careful that it's giving it to a vendor that can do what it says it will do. Absolutely, Your Honor, and we think that the Bureau is entitled to consider a company's size. It's our position. We just think that they're not allowed to apply a heightened standard of review based on the company's size. That's what they said they wouldn't do in paragraph 76 of the RDOF order. That's what they did. Ex post, Commissioner—in Commissioner Carr's words, they implied an entirely different standard of review that they, quote, made up on the fly. Commissioner Symington said they changed the rules in the middle of the game. And so it's not that they can't account. So why isn't that just harmless error here? Because you're not questioning any of their, you know, whether there's any substantial evidence for what they found. So if you just took out the words, you know, that you object to in the order, couldn't the FCC just simply reach the same conclusion? No, Your Honor. We think that if they, under the presumption of regularity, if they reviewed our long-form application under the correct standard of review, we think that they would grant our long-form application. But the FCC, to the harmless error question, the FCC has not made any sort of harmless error arguments. We think that's waived. If you look at their arguments in their brief, they're arguing that they applied the correct standard of review, that they gave notice because they gave notice after the fact in the iterative process. They're not arguing any sort of harmless error. And we think that's waived. If you look at page 44 of our brief, we address this as the national fuel case. That case says if there's alternative holdings, maybe it's harmless error. But if there's mutually reinforcing reasons, that means it's vacateur. And in this case, we have the reasons that the agency gave are mutually reinforcing. So we think that requires vacateur. The dissent in the SpaceX decision was awfully powerful. Why do you think you didn't get a dissent in your case? We can't speculate as to why a particular commissioner voted in a particular way in our case or another case. They didn't write in our case. They did write in the Starlink case. We know what they were thinking from their writing in the Starlink case. And in that case, as I mentioned, they said that the commission changed rules in the middle of the game, applied an entirely new standard made up on the fly. With respect to the RDOF auction, it's the same auction, that issue here. And the standard of review that they applied in that Starlink case, size, scope, and scale review, that's a standard that they introduced with our application and the Starlink application that they've never applied to any other application that we are aware of. And they certainly haven't pointed to one. I certainly agree. I can't expect you to read the minds of FCC commissioners. But I can't think of a reason why, of a likely reason why they would have said what they said in the Starlink case and not said it here unless they thought those bad things were happening in the Starlink case and those bad things were not happening here. Again, Your Honor, I can't speculate. But the reasons that they gave for dissenting in the Starlink case are based on the standard of review that the commission applied. It's a new standard of review, and they applied a size, scope, and scale review. That's the exact same standard that they applied here. And part of what was going on in those dissents is they were pointing out that the RDOF rules were promulgated under one administration, and then there's a change in administration. Two commissioners dissented in part from the promulgation of the RDOF rules because they were dissatisfied with aspects of those rules. One of them said he was, quote, extremely frustrated about certain defaults in the Connect America auction. And then you have a change in administration. Lo and behold, the two of the three biggest auction winners in the RDOF auction have their long-form applications denied with what these two commissioners called the two dissenting commissioners of Starlink called an entirely new standard of review. But not in your case. But, again, it's the same standard. So a size, scope, and scale review, that is the standard that they applied to Starlink. That's the new standard they introduced. It's heightened scrutiny, and that's the exact same language that they used in our case as well. If we were to agree with you on fair notice, what do you think the remedy would be? The remedy is vacateur, and the agency cannot require what they did not notice. So if you look at the very last sentence of the satellite broadcasting case, the very last sentence of the Trinity broadcasting case, Radio Athens as well, those are very analogous cases. They're cases where an agency denied an application and imposed requirements that were not noticed. I want you to apply those cases to this case. The remedy here would be you get the money? No, no, no, Your Honor. So the remedy would be vacateur, and they can't impose the requirements that they only noticed ex post. So they can't require us to hire a certain professional engineer. They can't require us to send all these granular details about our customer service center that weren't noticed. You would have the chance to submit the long-form application as you argue it should have been required and no more. And then if you submit it, it still seems a little weird. I guess if you completed the version of the long-form that you think is best and they find it's complete, but then completeness wouldn't be enough. Complete is not enough, Your Honor. And we were just talking about notice, so that's the remedy for notice. I asked it really poorly. Let me try to rephrase. Let's imagine the relief is you get to submit the version of long-form that you wanted to submit, and they can't require more than that information. But after you submit that information and only that information in their best judgment, you're not even close to able to do what you said you were going to be able to build, build what you said you would be able to build. So do they just give you the money anyway because you've submitted the version of the long-form application that you think is the right version? No, Your Honor. So if you strip out the requirements that they imposed ex post, then they still have to apply the correct standard of review. So if they went back and said, we recognize that the bank said this and the engineer said this, and we recognize we're supposed to rely on that determination, that determination will provide assurance of the applicant's qualifications to meet its public interest obligations. And nevertheless, for reasons X, Y, Z, no reasonable person could conclude this. That would be a different case, Your Honor. But that's the sort of analysis that they were required to do and we would be asking for on remand. Thank you. Thank you. May it please the Court. Maureen Flood on behalf of the Federal Communications Commission and the United States of America. I'd like to start by saying that the Federal Communications Commission has to be a prudent guardian of the Universal Service Fund. And it was not going to give $1 billion in universal service subsidies to a small company to build, operate, and manage a 10-state broadband network without checking that company's technical and financial qualifications. Prior to the auction, the Commission announced that it would require winning bidders like LTD to file long-form applications accompanied by extensive financial and technical data, and that it would perform an in-depth review of that information to determine whether the applicant was reasonably capable of meeting its public interest obligations across the states where it placed winning bids. As the Court has articulated in exchange with Petitioners' Counsel, Commission staff reviewed that information and determined that LTD was not technically and financially capable of meeting its public interest obligations. LTD did not demonstrate that it had the financing available to support the network that it needed to build. LTD didn't file sufficient information with the Commission. The information it filed did not break down its data by state, even though the long-form application requirements required that level of detail. I'm concerned about the FCC's argument here that it's not bound by the actions of its staff. That seems to me to be quite remarkable, especially where here the decision was published. And so, I mean, you have a regulation that says if documents are published, then both the parties and the Commission may rely on them in those matters. And yet here in your brief before this Court, you're making an argument that seems directly at odds with your own regulation. So can you explain that? Your Honor, we are only making that argument with respect to LTD's position that the denials of other long-form applications for incompleteness meant that the Commission could not deny its application on any other grounds. The Commission's argument is that it doesn't have to treat like cases alike if they're decided by staff? Yes, and that's consistent with this Court's longstanding precedent. In the SNR Wireless case, which we discussed in our brief, an unhappy long-form applicant came to this Court and said that the denial of its long-form application was inconsistent with Commission staff's denial of other long-form applications. And because Commission staff granted those other applications, the Commission had to grant its application. And this Court, relying on longstanding precedent, the Comcast case, for example, said no. In fact, actions by the Commission staff never bind the Commission. It doesn't establish a policy that the Commission has to file. And again, this Court, that's what this Court held in a nearly analogous case. Again, I point out here, the Commission was not disavowing the findings of its staff with respect to LTD's qualifications for universal service support. In fact, the Commission adopted those findings in the order on review. We are only relying on the SNR Wireless precedent to object to LTD's argument that the staff's denial of long-form applications on incompleteness grounds somehow means that the Commission is prohibited from denying long-form applications on grounds other than completeness. This is also inconsistent, Your Honor, with the language in the Auction Procedures Public Notice and the Commission's auction rules. The Commission repeatedly stated that long-form applicants would have to file extensive information with their long-form applications and that the staff would perform an in-depth review of that application to determine whether they are qualified. There would be no point in requiring long-form applicants to file that information with the Commission if the staff was not going to review it. Now, I want to speak to the letter of credit issue because I think this is very important. The petitioner is asserting that the Commission had to defer to the bank's willingness to issue a letter of credit to establish that the applicant was financially qualified to meet its public interest obligations. That is not correct. That is contradicted by paragraph 64 of the Auction Procedures Public Notice. The Commission very clearly stated that its staff would evaluate the information filed with a long-form application and rely on a bank's willingness to issue a letter of credit to determine whether or not the applicant was reasonably capable of meeting its public interest obligations. So it was a two-part requirement. The staff evaluated the information filed with a long-form application. The letter of credit is one element of that, of the body of information filed, and it would rely on the letter of credit or the willingness of the bank to issue a letter of credit. I'd also like to point out that a letter of credit doesn't establish that a long-form applicant is financially qualified. A letter of credit covers, at most, two years of universal service support payments. Have you ever applied the scope, scale, and size review that you applied here, aside from the Starling case? Sure. There is no scope, scale, and size review. The Commission applies the same standard in its review of every long-form application. Paragraph 76 of the Auction Procedures Public Notice directed the Commission staff to evaluate whether a long-form applicant could scale up its operations to provide a broadband network in the area covered by its winning bid. So what that means is, as the Commission was evaluating whether a long-form applicant was qualified for support, it considered scope, scale, and size in reviewing every application. If you're looking at how an applicant is going to scale up, you have to look at where the applicant is today and where it has to go. So even in applications from companies as large as Comcast or Charter Communications, the Commission staff looked at scope, scale, and size. Here, what happened was the Commission staff looked at the information that LTD filed with its long-form application and reasonably determined that LTD had failed to demonstrate that it could scale up. If they were a bigger, let's say they were the biggest company, whatever the competitors are, let's say they were the biggest of them. Sure. Would you reach the same result? No, not necessarily. Again, what happened was the Commission applies the same standard. Are you reasonably capable of meeting your public interest obligations? So if a large company came in and it wanted to expand massively but it didn't have its financing in order, the Commission staff could theoretically find that it's not financially qualified for universal service support. It really depended on the showing made by the applicant. And again, this scope, scale, and size review is a fiction. The number of households that they were supposed to eventually build out to, I think it's in the public record, the number. Originally, Your Honor, it was more than half a million, but through defaults. At the time we denied the long-form application, it was, I believe, 367,000 residences and businesses in 10 states. What has happened to them? Sure. So as a result of their default, they were denied, obviously, universal service support. What that means is the areas covered by LTD's winning bids are now eligible for universal service support. Now, I shouldn't say that's a misnomer. Not universal service support. We do universal service support. But they are eligible for broadband funding from other state and federal programs. So the states and the federal government, NTIA with the Department of Commerce, the FCC, state commissions, state authorities, have all sort of decided that they are not going to provide duplicate support for areas that lack broadband. But we don't know these 300,000 or 500,000. We don't know whether Department of Agriculture or some other organization, some other government entity has provided them service. No, Your Honor. And to be honest, I think a lot of those other state and federal programs are waiting to see the outcome of this case. Because you can imagine that if they granted broadband funding to one of the areas covered by LTD's winning bids and the court ruled against the commission, which you shouldn't, you should affirm the order. But then you would have to wait until Starlink provides them the service without the government's help. Pardon me, sir? What about Starlink? Those other agencies might just wait long enough for Starlink to provide them the service without the government's help. I can't answer that question, Your Honor. Even if I were one of these 300,000 or 500,000, I would not be thrilled with what the FCC has done here. If Congress appropriated – there is money, there's government money to be spent to provide new service. FCC picked LTD and then LTD – and then FCC made a decision that means these people will have to wait probably years longer to get service unless Starlink gets it to them first. Well, no, Your Honor. Let me point out a few things. Number one, the FCC did not give them this money. They won the money in the auction. No, no, no. The people. I'm talking about the household, not LTD. That's not necessarily true. I mean, let me start by saying the commission reasonably decided to take a conservative approach here. We're talking about universal service dollars. My only point is whether you call it a conservative approach or not, it seems like an approach that was at the expense of those 400,000, 500,000 households who don't have internet and are hoping to get internet sooner. No, you're not, Your Honor. And here's why. This is a 10-year program. Okay? What that means is in the first two to four years of the program, the winning bidders don't actually have to build out facilities to serve those customers. It's most likely that many of those customers wouldn't start getting broadband service for at least two years. Okay? The commission decided that if it denied the long-form application now, those areas would be eligible for funding sooner. Can I ask, why does it take 10 years? I mean, I don't think it's going to take Starlink 10 years to get all these people covered. Your Honor, many of these companies aren't Starlink. Many of the winning bidders in the auction, including LTD, were going to use fiber technology. I mean, Starlink without the FCC's free money. Your Honor, the Starlink issue isn't before the court. LTD is before the court, and LTD was going to use fiber technology. But let me point this out. You know, if the commission took a chance, if we took a chance with LTD, right, LTD's build-out milestones wouldn't come into play for two to four years. If LTD was not, in fact, financially and technically qualified, they might default four years down the road. At that point, the commission would be pulling universal service subsidies back, but those customers would be stranded. So if you're talking about delay, Your Honor, the commission did take a conservative approach because it was the commission's judgment that rather than taking a risk on a company that might default four or five years down the line, it would not grant the application. And it would free those areas up so that they could basically be eligible for universal, I keep saying universal service, but broadband support from other programs and potentially that that support would be taken by companies that were actually qualified to serve those areas. You know, the commission isn't required to give a billion dollars to a company on the hope, the hope that it will be technically and financially qualified to provide the services that it's committed to provide, right? Again, it took a more conservative approach here. You know, and I wanted to point out the record shows that LTD was not financially and technically qualified for universal service support. And I would also point out that LTD has never asserted that the commission's findings in that regard are not supported by substantial evidence. Why didn't the FCC make a harmless error argument here? Honestly, we were not sure about the standard of review that the petitioners were asserting that we should apply if we got it wrong. In other words, to this day, the commission isn't entirely clear about whether if the court finds that we were in error, we are simply supposed to approve the application because they filed a network diagram certified by a professional engineer and demonstrated that a bank was willing to issue a letter of credit. But if we're allowed to review the application for completeness, not sure if that means that we're checking that they have a document titled project funding description, or if we're actually allowed to look at the substance of the application, because we didn't know what the standard review was, it was hard for us to argue, make a harmless error argument, right? Because if we're not allowed to look at the application, then it brings to question whether or not we were actually even allowed to look at the substance of the application. I hope that answers the court's question. I would say this, when we grant a petition for review, we don't usually direct the agency what action it has to take on remand. I mean, we would vacate the denial, but we wouldn't direct the FCC to grant the application. Well, respectfully, Your Honor, the question before the court is, did we apply the wrong standard of review in LTD's case? So to remand, you would have to find that we applied the wrong standard, and presumably in doing so, you would clarify the standard that we would have to apply if you remanded in reviewing LTD's long-form application. That was our thinking on the matter. I will say that, you know, under even the most deferential standard of review, LTD is not technically and financially qualified for universal service support, and the commission's findings in that regard are reasonable. And I would also underscore again that LTD has never asserted that those findings are not supported by substantial evidence. I have one little question. It doesn't go to the merits or anything else. I'm just curious. You referred to a petition for review, and I looked at the caption that the FCC and the LTD filed, and it says respondents and et cetera. This is an appeal, isn't it? No, Your Honor, it's a petition for review because the commission… The statute, the jurisdictional statute calls this an appeal. Your Honor, I don't have the statute in front of me, but we… I do. Which is why I'm asking the question. Sure, no, I understand. We viewed this as a petition for review because typically with 402B cases, which are appeals, we are denying a license. Here we were denying…we weren't actually denying a license. We were denying an application for federal money, and so in that sense, we viewed it as falling under Section 402A. We just didn't…we didn't identify a category under 402B that this…that LTD's… Okay, that was the appeal, right? B? Appeal is B. Okay. Petition for review is A. So A goes back to the Hobbs Act? Correct. Okay. And the Hobbs Act is petition? I don't think so. I think it says pursuant to, you know, the statute. Your Honor… Our clerk's office will get this straight.  I mean, Your Honor, we were responding to what the petitioners filed. Now that said, we have an independent obligation to make sure that they're… Petitioners said it's appeal from the decision of the FCC. Your Honor, I apologize that we might have messed up. I don't have the statute in front of me, but if the clerk's office does clarify our error, if we made one, then we appreciate that. Okay. Thank you. Thank you, Your Honors. I would ask the court to deny the appellant's appeal or the petitioner's petition for review, whichever it might be. And I thank you for your time. I'm going to try to just quickly tick through a couple things. First, I think my opposing counsel conceded that the FCC has not made any harmless error argument here. On the standard of review, again, I would just ask the panel to compare the language of paragraph 23 of the commission's order on review, denying our long-form application, with the language of paragraph 76 of the RDOF order, using almost the exact same language. And the commission did exactly what it said it wouldn't do ex ante. On rely on, it's a conjunctive, so we had a dispute about this in the briefing. But even if you accept their view on the evaluate and rely on, it's still a conjunctive, and so they still had to rely on the bank's willingness to extend the letter of credit. That did not happen here. On the need to prevent waste of government funds, there's no safe option. So there is the risk that an applicant will not fulfill its public interest obligations. But on the other side, there's the risk that people are not going to get, rural Americans will not get broadband Internet, as you pointed out, Judge Walker. And so the commission was trying to get these funds out quickly. Chairman Pai said we want to get these funds out as quickly as possible. And so it's balancing multiple risks. On one side, the risk of public interest obligations not being fulfilled, risk on the other side that the funds won't get out quickly to deploy broadband to rural Americans. And then lastly, I would just say, since they focus so much on the size of our company, we think that at minimum they should have grants as partial authorization to service some of the states that we bid and won for. But you did not ask for. That's true. Well, actually, Your Honor, so they knew the whole time that we were seeking partial authorization, because as you pointed out, we had withdrawn our bids in four states that we had won. So we were the entire time throughout this iterative process, we were seeking authorization for some but not all of the states that we had won. I have one kind of 10,000 foot question. Some of the precedents deal with a government agency that's regulating entities that just want to be left alone. And, you know, we require the agency to satisfy certain procedural requirements, notice requirements, et cetera. But that's not your situation. Your situation is you want free money from the government. And in that situation, you know, is there something to be said for kind of like you live by the capriciousness of this agency, you die by the capriciousness of this agency? I don't think that's right under this court's case law, Your Honor. So there's no natural right to these funds, but there's no natural right to the licenses that the applicants were seeking in Trinity Broadcasting, Radio Athens, Satellite Broadcasting. And we are entitled to have agency action that follows the rules and procedures that are promulgated ex ante. I agree. Thank you. Thank you.
judges: Rao; Walker; Randolph